IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OSCAR L. TAYLOR,                  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     1:11CV407
                                  )
"CASE MANAGER" ANGELA LAWSON,     )
et al.,                           )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for review pursuant to 28 U.S.C. § 1915A. For the reasons that follow, it is recommended that Plaintiff's Complaint be dismissed without prejudice for failure to state a claim.

BACKGROUND

This case began when Plaintiff, while then incarcerated at a federal prison in the Eastern District of North Carolina, filed what he styled as a "Complaint for Violation of Civil Rights[,] Request For Jury Trial[,] Suit For Bureau Of Prison Program Statement Violations, Declaratory and Injunctive Relief 'Class Action'" based on alleged "Misconduct And Deliberate Violations of Authority 'BOP'" in the United States District Court for the District of Columbia. (Docket Entry 1 at 3 (emphasis added).) The Complaint identified the following Defendants: 1) Case Manager Angela Lawson; 2) Assistant Director Melissa Burgess; 3) Director Monique Freeney; 4) Case Manager Michael Pinnix; 5) Case Manager David Wardlow; 6) Bureau of Prisons ("BOP") Community Corrections Officer G.O. Moore; 7) BOP Community Corrections Administrator

Kelly Boyle; 8) BOP Mid-Atlantic Regional Director Kim White; and 9) BOP Director Harley Lappin. (Id. at 1-2.) Based on the address listed for them and the allegations of the Complaint, it appears that (at the time of the relevant events) Defendants Lawson, Burgess, Freeney, Pinnix, and Wardlow worked at the Salvation Army Residential Re-Entry Center ("RRC") in Winston-Salem, North Carolina. (See id. at 1-3, 8.)

The Complaint alleges that Plaintiff "received and [sic] incident report on 09/02/2009 at the Salvation Army RRC and upon doing so lost 399 days of earned [credits against his custodial sentence for participation in a drug treatment program and for good conduct]." (Docket Entry 1 at 4.) According to the Complaint, "[t]he incident report stated, 'on 08/25/09, [Plaintiff] w[as] administered a [urinalysis] test by [Defendant] Wardlow . . . the results [of which were positive] for Opiates. Therefore [Plaintiff is] in violation [of] Code 212 - Use of Narcotics.'" (Id. at 4-5.)

Through the Complaint, Plaintiff expressly seeks to challenge:

1) "the incident report [Plaintiff] received on 09/02/2009 at the Salvation Army RRC and the subsequent loss of 399 days of earned [sentence-reduction credits]" (id. at 4); and

2) "the subsequent failure to notify [Plaintiff] of the DHO [Disciplinary Hearing Officer] Hearing and not permitting [Plaintiff] to participate in [the DHO Hearing]" (id.).

In addition, the Complaint contains objections to other aspects of the DHO Hearing (id. at 4-7), one issue from his "UDC" (i.e., Unit Disciplinary Committee) Hearing (id. at 7-8), and other

-2-

related matters (id. at 8-9). Based on the allegations in the Complaint, Plaintiff "request[ed] to have [his sentence-reduction credits] reinstated . . . [and] request[ed] ten million dollars in Punitive Compensatory and Actual damages, Mental, Emotional Distress, Hardship and the Loss of Liberty." (Id. at 8.)

Because "'the sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus,'" the United States District Court for the District of Columbia "construe[d] [P]laintiff's [instant] action as a petition for writ of habeas corpus." (Docket Entry 3 at 1-2 (quoting Edwards v. Balisok, 520 U.S. 641, 644 (1997)).) In light of authority limiting jurisdiction for habeas proceedings "'involving present physical custody'" to the federal district of the custodian, the United States District Court for the District of Columbia transferred this case to the Eastern District of North Carolina (where Plaintiff then remained in custody). (Id. at 2-3.)

Following that transfer, Plaintiff moved to amend his Complaint to allege that he had exhausted his administrative remedies (because he "never received a response from the Administrative Officials"). (Docket Entry 7.) Plaintiff also filed a notice of address change reflecting that he was no longer in custody in the Eastern District of North Carolina, but rather that he now resided out-of-custody in Kentucky. (Docket Entry 8.) The United States District Court for the Eastern District of North Carolina thereafter entered an order:

1) explaining to Plaintiff that, if the action proceeded as a habeas proceeding, his monetary damage request would be dismissed without prejudice (Docket Entry 9 at 2);

2) affording Plaintiff an opportunity to inform the court if he wished "to continue the matter as [a] civil right[s] matter" (id. at 3); and

3) granting Plaintiff's motion to amend his Complaint (id.).

Plaintiff then filed a document stating that he "would like to continue this issue before the court as a civil suite [sic]/ Bivens." (Docket Entry 10 at 1.) As a result, the United States District Court for the Eastern District of North Carolina entered the following order:

> Plaintiff responded that he does not proceed in habeas, but under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as he originally filed. Plaintiff has been released from custody and is in Kentucky. Five defendants in the matter are located in Winston-Salem, North Carolina, two are located in Creedmoor, North Carolina, one in Annapolis Junction, Maryland, and one in Washington, D.C.
>
> . . . .
>
> [Because] [t]he majority of the defendant[s] are located in Winston-Salem, North Carolina, which is also where the incident in question occurred . . . the court ORDERS the Clerk of Court to TRANSFER [P]laintiff's action to the United States District Court for the Middle District of North Carolina, where venue is proper. The court has not conducted a [28 U.S.C. § 1915A] review. The United States District Court for the Middle District of North Carolina is better positioned to address such issues.

(Docket Entry 11 at 1-2.)

## FACTUAL ALLEGATIONS

### Issuance of the Incident Report on September 2, 2009

As to the issuance of the Incident Report, the Complaint contains the following, pertinent factual allegations:

1) Plaintiff "did not take any opiates or illegal drugs" (id. at 5);

2) despite Defendant Wardlow's statement that "he would forward [to the laboratory] a copy of the medication log [showing that Plaintiff took Sudafed PE, Benadryl, Weider Protein Supplement, Hydroxycut, and Pronabolin]," that medication log "was not sent with [Plaintiff's August 25, 2009 urine] sample . . . [and thus the laboratory] would not have known the ingredients in [Plaintiff's] medications that may have caused a positive test" (id. at 5-6);

3) "proper investigation procedures were not followed" in that Defendants Burgess and Pinnix failed to ask the proper official "to contact the testing laboratory to determine if the combined medications [on Plaintiff's medication log] could result in a 'false positive' test" (id. at 5; see also id. at 8 ("[Defendant] Burgess broke procedure when she did not contact Correctional Service Administrator, nor did the investigating officer [Defendant] Pinnix"));

4) "[t]he procedure concerning [the taking of urinalysis samples] were [sic] violated" in that, prior to the acquisition of the urine sample, Defendant Wardlow "never washed his hands, nor did he request that [Plaintiff] wash [Plaintiff's] hands" and

-5-

Defendant Wardlow "took the urine sample from [Plaintiff's] sight for at least 5 minutes" (id. at 5-6);

5) pertinent administrative policies (i.e., the BOP's "Program Statement" or "P.S.") require "that an initial positive test [be] confirmed by a second test before it is reported to the institution . . . [but] [t]his was not done" (id. at 7);

6) the testing laboratory "do[es] not send a [urinalysis] report to [the BOP or the Salvation Army RRC] simply stating that the test was positive for opiates . . . [but] would have identified the exact drug that was screened, i.e., morphine, codeine, or heroin" (id. (internal emphasis omitted));

7) Plaintiff was not told whether the laboratory test showed a level of opiates sufficiently "above the 300 Ng/m cut-off level" (id.);

8) "[t]here was never a second test done after [Plaintiff] informed the RRC staff that the medication [he] was taking could cause a false positive" (id.);

9) Defendant Lawson "did not follow[] the proper procedure upon writing [Plaintiff] the Incident Report" (id. at 8);[1] and

10) "[o]n 11/08/09, [Plaintiff] had another [urine sample] taken . . . [that] tested positive . . . [but] [i]t was later determined to be a 'false positive'" (id. at 6).

---

[1] The Complaint does not state what procedure Defendant Lawson failed to follow. (See Docket Entry 1 at 8.) Elsewhere, the Complaint does allege that someone (presumably, Defendant Lawson) cited the wrong "Code" number for "Use of Narcotics" in the Incident Report, but does not allege that "Use of Narcotics" failed to constitute an administratively punishable offense. (See id. at 5.)

## The DHO Hearing

As to the DHO Hearing, the Complaint contains the following, pertinent factual allegations:

1) Plaintiff "was not notified and did not participate in the DHO [H]earing" (id. at 4; see also id. at 6-7 (alleging that, contrary to BOP's Program Statement, Plaintiff did not receive or waive notice of DHO Hearing and that DHO Hearing "was held in private and secret" outside of Plaintiff's presence (internal emphasis omitted)));

2) Plaintiff "never received the decision from the DHO" (id. at 4);

3) contrary to the BOP's Program Statement, Plaintiff "was given no staff member to represent [him] at the DHO [H]earing" (id. at 6 (internal emphasis omitted)); and

4) contrary to the BOP's Program Statement, because of his absence from the DHO Hearing, Plaintiff "was not given the opportunity to make a statement or present documentary evidence . . . [or] to submit names of [his] requested witnesses to testify and present documentation on [his] behalf" (id. at 6-7 (internal emphasis omitted)).

## Other Allegations

Finally, the Complaint contains these additional factual allegations of note:

1) "letting [Defendant] Wardlow, who gave [Plaintiff] the [urinalysis test], act as a representative for [Plaintiff] in a UDC hearing" violated the BOP's Program Statement (id. at 7; see also

id. at 8 (alleging that Defendant Wardlow "should have known" that because he "gave [Plaintiff] the [urinalysis test] that it is clearly a violation to sit in as representative to [Plaintiff] during a UDC hearing"));

2) Plaintiff "provided a 25 page report to the Assistant Director during the hearing and a copy of [his] medication log, [to show] that the Sudafed PE [he had taken] would cause a false positive [urinalysis]" (id.);[2]

3) Defendants Moore, Boyle, and White "failed to step in to see that [Plaintiff] was treated unfairly [sic]" (id. at 8);

4) Defendant Moore "has refused to forward [Plaintiff] a DHO packet" (id.); and

5) Defendant Lappin, "being the Director of the [BOP], is responsible for the actions and conduct of his staff, to see that they have adequate training concerning the [BOP's] Program Statement and Rights of Inmates" (id. at 9).

## DISCUSSION

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court must "review" his Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the

---

[2] The Complaint does not explicitly identify the "hearing" at which he provided this report to an unnamed Assistant Director (perhaps Defendant Burgess). (See Docket Entry 1 at 7.) Elsewhere, the Complaint alleged that Plaintiff did not participate in his DHO Hearing, but did take part in his UDC Hearing. (See id. at 4, 6-8.) Moreover, the Complaint references no other hearings. (See id. at 1-9.) Accordingly, the only reasonable inference from the Complaint is that Plaintiff submitted this material during his UDC Hearing.

-8-

complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or <u>fails to state a claim upon which relief may be granted</u>; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b) (emphasis added). The required review reveals that the Court should dismiss the Complaint for failure to state a claim.

A plaintiff fails to state a claim when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id</u>. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[3]

---

[3] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298,
(continued...)

As noted above, see supra, p. 4, Plaintiff has made clear that he seeks to pursue Bivens claims against Defendants. "In Bivens, the [United States] Supreme Court held that 'violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages,' despite the absence of any federal statute creating liability." Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006) (internal brackets omitted). "'In over 30 years of Bivens jurisprudence the [Supreme] Court has extended its holding only twice.'" Id. (quoting Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001)). "The first time was in Davis v. Passman, 442 U.S. 228 (1979), where the [Supreme] Court recognized that a female deputy administrative assistant could claim damages under the Fifth Amendment's Due Process Clause against a Congressman who had fired her on the basis of her gender. The second was [the] extension of Bivens to Eighth Amendment suits against federal prison officials [in Carlson v. Green, 446 U.S. 14 (1980)]." Id. (internal parallel citations omitted). "Since the Carlson decision in 1980, the Court has consistently declined to extend Bivens beyond these well-demarcated boundaries." Id. (citing cases). See also Iqbal, 129 S. Ct. at

---

³(...continued)
305 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint). Accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 129 S. Ct. at 1950, respectively)), cert. denied, ___ U.S. ___, 130 S. Ct. 2064 (2010), and cert. denied sub nom., Zachem v. Atherton, ___ U.S. ___, 130 S. Ct. 3275 (2010).

1948 ("Because implied causes of action are disfavored, the Court has been reluctant to extend Bivens liability to any new context or new category of defendants." (internal quotation marks omitted)).

Bivens and its Supreme Court progeny thus do not create an implied federal cause of action for all perceived wrongs alleged by federal prisoners. In this case, Plaintiff's Complaint identifies the alleged wrongs he seeks to right via Bivens as: 1) "Violation of Civil Rights" (Docket Entry 1 at 3); 2) "[BOP] Program Statement Violations (id.); and 3) "Misconduct And Deliberate Violations of Authority 'BOP'" (id.). "The purpose of Bivens is to deter individual federal officers from committing constitutional violations." Correctional Servs., 534 U.S. at 70 (emphasis added). Plaintiff's Bivens claims therefore can proceed only to the extent his Complaint sets forth factual allegations that would establish, at a minimum, constitutional violations by federal officers.[4]

### The Complaint Fails to State a Bivens Claim against Any Defendant as to the Issuance of the Incident Report on September 2, 2009

The Court should dismiss Plaintiff's Bivens claims against all Defendants predicated on the issuance of the Incident Report on September 2, 2009 (and the fact that, but for his receipt of said Incident Report, he would not have lost his sentence-reduction

---

[4] In light of this standard, if Defendants Lawson, Burgess, Freeney, Pinnix, and Wardlow are employees of the Salvation Army and not the BOP, Plaintiff may not maintain Bivens claims against them. See Holly, 434 F.3d at 288-97 (ruling that federal prisoner could not pursue Bivens claim against employees of private facility where he was held). However, because the Complaint does not conclusively reveal the employment status of said Defendants, the undersigned United States Magistrate Judge declines to recommend dismissal on that ground at this stage of the proceedings.

-11-

credits). First, the Complaint contains no allegations that Defendants Freeney, Moore, Boyle, White, or Lappin played any part in the issuance of the Incident Report. Rather, the Complaint alleges participation in that event only by Defendants Lawson, Burgess, Pinnix, and Wardlow and only as follows:

1) Defendant Lawson "wr[ote] [Plaintiff] th[at] Incident Report" (and "did not follow[] the proper procedure" in doing so) (Docket Entry 1 at 8); and

2) prior to the issuance of the Incident Report, Defendants Burgess and Pinnix violated "procedure" by neglecting to have another official "contact the testing laboratory to determine if the combined medications [on Plaintiff's medication log] could result in a 'false positive' test" (id. at 5; see also id. at 8);

3) Defendant Wardlow failed to forward Plaintiff's medication log to the laboratory and to follow proper "procedure" in obtaining the urine sample that turned up positive (id. at 5-6).

"Because vicarious liability is inapplicable to Bivens . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. The Complaint does not allege that Defendants Freeney, Moore, Boyle, White, or Lappin took any actions related to the issuance of the Incident Report, much less that any such actions by said Defendants "violated the Constitution," id. Plaintiff thus has failed to

state a claim against Defendants Freeney, Moore, Boyle, White, and Lappin regarding the issuance of the Incident Report.[5]

Nor do the above-summarized allegations in the Complaint about the activities of Defendants Lawson, Burgess, Pinnix, and Wardlow related to the issuance of the Incident Report on September 2, 2009, see supra, p. 12, suffice to state a constitutional violation. At most, Plaintiff's factual assertions (if true) would support a finding that said Defendants negligently failed to follow proper administrative procedures in obtaining Plaintiff's urine sample, submitting it to the laboratory for testing, responding to the positive result, and writing up the Incident Report.

The Court therefore should dismiss Plaintiff's Bivens claims against Defendants Lawson, Burgess, Pinnix, and Wardlow regarding

---

[5] The fact that Defendants Freeney, Moore, Boyle, White and Lappin may hold supervisory positions does not alter this conclusion. See Iqbal, 129 S. Ct. at 1949 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." (emphasis added)). Moreover, conclusory allegations, such as the Complaint contains, that Defendants Moore, Boyle, and White "failed to step in" (Docket Entry 1 at 8) cannot save Plaintiff's Bivens claims against said Defendants. See Iqbal, 129 S. Ct. at 1949 (rejecting notion that "supervisor's mere knowledge of his subordinate's [impropriety] amounts to the supervisor's violating the Constitution"). As a final matter, the Complaint's conclusory assertion that Defendant Lappin, being the Director of the [BOP], is responsible for . . . see[ing] that [his staff] ha[s] adequate training concerning the [BOP's administrative policies]" (Docket Entry 1 at 9) similarly falls short. First, Iqbal "leaves little room for arguing that a government official may be held liable . . . for failure to train." Brach v. City of Wausau, 617 F. Supp. 2d 796, 805 (W.D. Wis. 2009). Second, the Complaint does not allege that any Defendant under Defendant Lappin's authority lacked adequate training. (See id. at 1-9.) Third, as noted above, see supra, pp. 10-11, a Bivens claim requires proof of a constitutional violation, not simply deviation from administrative policies; because (for reasons that follow, see infra, pp. 13-14) the Complaint lacks sufficient allegations to establish that any Defendant violated the Constitution in connection with the issuance of the Incident Report, Plaintiff cannot maintain a claim that Defendant Lappin's alleged "failure-to-train" any other Defendant about such matters violated the Constitution.

their participation in the issuance of the Incident Report because "[i]njuries inflicted by governmental negligence are not addressed by the United States Constitution." Daniels v. Williams, 474 U.S. 327, 333 (1986); accord Nesbitt v. Meyer, No. 96-6852, 99 F.3d 1130 (table), 1996 WL 612455, at *1 (4th Cir. Oct. 24, 1996) (unpublished) (affirming dismissal of Bivens claim based on conclusion that, in light of Daniels, "negligence in [a federal official's] execution of his duties is not cognizable as a constitutional wrong"); Schultz v. Braga, 290 F. Supp. 2d 637, 654 (D. Md. 2003) (ruling that allegations of negligence against federal law enforcement officials did not state Bivens claim), aff'd on other grounds, 455 F.3d 470 (4th Cir. 2006); Lee X v. Casey, 771 F. Supp. 725, 732 (E.D. Va. 1991) ("[T]he record shows, at best, that [the defendant-official] negligently failed [to perform a job function]. Negligent conduct simply does not give rise to constitutional claim . . . under Bivens. As a result, the complaint fails to state a claim for relief against [the defendant-official] and must be dismissed.").

<u>The Complaint Fails to State a Bivens Claim against Any Defendant Regarding the Administrative Hearing Process</u>

"Where a prison disciplinary hearing may result in the loss of good time credits, [the Supreme Court has] held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by

-14-

the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In addition, "revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." Id. (internal citations and quotation marks omitted). Assuming that a federal prisoner deprived of these guarantees (in contravention of the Fifth Amendment's Due Process Clause) may obtain relief via Bivens against a federal official responsible for any such deprivation, Plaintiff's Complaint fails to state such a claim.

First, the Complaint acknowledges that Plaintiff received written notice of the disciplinary charge for possessing drugs in the form of the Incident Report of September 2, 2009. (See Docket Entry 1 at 4-5.) Second, although the Complaint alleges that Plaintiff did not have an opportunity to participate in the DHO Hearing, it also describes his participation in his UDC Hearing, during which he had the opportunity to submit a 25-page report and his medication log in support of his claim that his ingestion of Sudafed PE, not of illegal drugs, caused his positive urinalysis. (See id. at 4, 6-8.)[6] Third, although the Complaint asserts that Plaintiff did not receive a report from the DHO Hearing (despite

---

[6] Moreover, the Complaint contains no allegation that the Assistant Director (or whoever else) presided over Plaintiff's UDC Hearing prohibited Plaintiff from calling witnesses. (See Docket Entry 1 at 1-9.)

his requests to Defendant Moore), it acknowledges that other administrative proceedings occurred (i.e., his UDC Hearing) and lacks any allegation that any Defendant failed to provide Plaintiff a written statement of the <u>ultimate</u> findings and basis for the discipline imposed; indeed, the Complaint indicates that Plaintiff clearly understood that he received punishment for using drugs because of the positive drug test. (<u>See</u> <u>id.</u> at 1-9.) Finally, the Complaint concedes that the record before the official(s) who punished him for using drugs contained some evidence (i.e., the positive drug test) to support that decision, although Plaintiff questions the reliability of that evidence. (<u>See</u> <u>id.</u> at 5-8.)[7]

<u>CONCLUSION</u>

Plaintiff's Complaint fails to state a <u>Bivens</u> claim against any Defendant based either on the issuance of the Incident Report on September 2, 2009, or the administrative process that followed. The Court therefore should dismiss this action under 28 U.S.C. § 1915A(b)(1); however, that dismissal should occur without prejudice, <u>see</u> <u>McLean v. United States</u>, 566 F.3d 391, 400 (4th Cir. 2009) (indicating that district courts should dismiss with prejudice under § 1915A(b)(1) only where they are "truly unable to

---

[7] The Court also should dismiss Plaintiff's <u>Bivens</u> claim related to the purported inadequacy of the administrative hearing process because the Complaint contains insufficient factual allegations regarding the accountability of any particular Defendant for any constitutional deprivation. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For reasons previously discussed, <u>see</u> <u>supra</u>, p. 13 n.5, the supervisory status of any Defendant, as well as conclusory allegations that any Defendant had a duty to protect Plaintiff's rights or "failed-to-train" subordinates, do not suffice.

conceive of any set of facts under which a plaintiff would be entitled to relief").

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Complaint (Docket Entry 1) be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 6, 2011